*945 OPINION.
Muedock :
The manner of computing the profit of $47,126.28 need not be set forth since the petitioner makes no attack upon the figures used. His contention is that he realized no profit whatever. The Commissioner, in determining the deficiency, has approved the report of a revenue agent. The latter has held that the petitioner was the owner by purchase of 2,000 shares' of class B common stock of Marshall Field & Co. and became the owner of 459 shares of class A common stock by exchanging therefor 1,459 of the class B common stock. Certain words and provisions of the contracts, when read alone, bear out the interpretation which the revenue agent apparently placed upon them. Nevertheless, the contracts wlien read in their entirety, and the other evidence in the case, show that the petitioner never actually purchased any shares and never became the owner by purchase or exchange of any shares of either class B or class A common stock.
The corporation never delivered and never intended to deliver any certificates to the petitioner so that he would become the owner of the shares. The contracts describe him as a purchaser and a holder of the shares, and the corporation went through the form of issuing stock certificates in his name, but those certificates never went out of the control of the corporation. They were placed before the petitioner in the office of the corporation merely for the purpose of having him endorse them in blank so that they could be retained permanently by the corporation. His testimony shows that he was not free to vote the stock. The contracts provided that under no circumstances could the petitioner ever become the actual unrestricted owner of any class A or class B shares. The shares standing in the name of the petitioner and held by the corporation were never to be delivered to the petitioner. He was never to be permitted to sell them or use them for any purpose whatever. The shares were used merely as a part of a plan for computing an amount to which the petitioner would become entitled at the termination of his employment. The amount was to be paid to him or to his representatives in cash. Under no circumstances could stock be demanded in payment. The general plan was to build up a fund to be paid to the petitioner as compensation over and above his fixed salary upon the termination of his employment. He was charged with the book value of the shares at the approximate dates of the contracts. The equivalent, in amount, of interest was computed on the charges. Entries were made on the credit side corresponding to the dividends declared on the stock. The petitioner was to receive for his own use *946 an amount equal to dividends at the rate oí 7 percent per share per annum upon any class A shares standing in his name. However, no class A shares stood in the name of this petitioner prior to the contract of February 1, 1927, and the question of how any amounts he may have received thereafter are to be taxed to him is not now in issue. The sole question is whether or not the petitioner realized a profit on an exchange. The decision of that question depends upon whether or not the petitioner became the owner of any shares as the result of an exchange giving rise to profit. Individual words in the contracts are not controlling where, as here, the evidence viewed in its entirety, shows that the petitioner was not intended by the parties to own any shares and in fact never became the owner of any shares.
Since the petitioner owned no shares either before or after February 1, 1927, he did not exchange any shares and, consequently, he realized no profit from an exchange on that day. The change which took place put into operation a somewhat different method of eventually determining the amount which the petitioner was to receive at the indefinite time in the future when his employment should terminate. He was on a cash basis and received in 1927 as a result of the new contract neither cash nor its equivalent. The transaction did not result in the realization of any income by the petitioner in 1927.
The revenue agent’s report, upon which the determination of the deficiency was based, simply states that the petitioner received a distribution of $1,118.51 from Marshall Field & Co. on January 5, 1927. However, the petitioner testified that he received no such distribution from Marshall Field & Co. The evidence fails to weaken his direct testimony on the subject. The presumption of correctness attaching to the determination of the Commissioner has been overcome.

Decision will loe entered for the 'petitioner.